WILLIAM S. HORN, APPELLEE, v. WILLIAM W. QUEEN, APPELLANT.

1. **Practice:** APPEAL. An appeal will lie to the supreme court from the final judgment of the district court, in an action brought to set aside a judgment of a justice of the peace, and to obtain a new trial.

2. **Equity.** A court of equity will grant relief against judgments obtained by fraud, surprise or mistake, or when from any cause manifest injustice has been done.

THIS was an appeal from a decree rendered by HON. S. B. POUND, sitting in the district court of Lancaster county, granting a new trial to the plaintiff, in an action before a justice of the peace wherein he was defendant. The case came before this court upon demurrer to the petition and is reported in 4 Neb., 108. A motion to dismiss the appeal was made and overruled, the following opinion being filed:

LAKE, CH. J.

A motion is made in this case to dismiss the appeal for two reasons: *First*, that the action is not a proceeding in equity. *Second*, because it does not appear that a final judgment has been rendered in the court below.

I. The action was brought in the district court to set aside a judgment of a justice of the peace, and to obtain a new trial on the ground that the judgment was rendered against the defendant in the suit during his necessary and unavoidable absence, and of which judgment he had no knowledge until it was too late to prosecute an appeal to the district court. The action, therefore, is clearly an original proceeding in equity to obtain relief from a judgment, which could be afforded only by a court exercising equity powers. Being an equity case, it is one in which an appeal will lie to this court from a final judgment of the district court.

II. As to the second ground of the motion, we only need to refer to the record, which discloses the fact that a final judgment was rendered, although somewhat informally, yet substantially in accordance with the prayer of the petition. The motion to dismiss the appeal must therefore be overruled.

MOTION OVERRULED.

The cause then came on to be heard, and from the evidence in the record brought to this court, it appeared that the plaintiff held a certificate of purchase of a certain tract of land from the Burlington and Missouri River Railroad Company, upon which he had entered and carried away some oats which defendant had sown thereon. The defendant introduced in evidence copy of letter from the commissioner of the general land office to the secretary of the interior, transmitting papers

in the case of C. L. Gumaer on appeal from decision of said commissioner canceling his homestead entry upon the same tract of land. From this letter and its accompanying documents it appeared that the defendant, Queen, had made an application for the entry of the said tract of land as a homestead, December 22, 1870, which was rejected on the ground that said tract had enured to the benefit of the Burlington and Missouri River Railroad Company; that said application was prior to the date at which Gumaer was allowed an entry upon the tract, being May 10, 1871; but that afterwards Gumaer's entry was cancelled, and permission given Queen to perfect his title. These facts, together with those stated in the opinion, are sufficient to an understanding of the issues involved in the case.

*Tuttle, Harwood & Ames,* for appellant, Queen, presented the following points:

I. The demurrer admitted—and this point was especially dwelt upon by the learned judge who pronounced the opinion of the court, 4 Neb., 108, that the plaintiff held a certificate of purchase of the tract of land from the B. & M. R. R. Co., and that the defendant, Queen, had a second homestead entry on the land, the first held by one Gumaer being uncanceled, yet he had never resided on the land, or complied with any of the provisions of the law. In short, the demurrer admitted that Queen's homestead entry, under which alone he claimed, was void, and that the plaintiff was the rightful owner of the property, rightfully in possession. Whereas, the testimony shows conclusively that Gumaer's entry was cancelled before that of Queen was made or allowed, and that consequently Queen had the first and only valid entry on the land, and the decisions of the Land Department, and of the Secretary of the Interior of the United

States, certified transcripts of which constitute a part of the record, are to the effect that the railroad company never had a title or right of possession to the land, and hence could not confer either upon the plaintiff. These decisions have been acquiesced in by the parties concerned, and are conclusive upon the parties to this suit. It may be added that the United States Supreme Court has decided the exact question involved in exactly the same way. In no event, then, can the plaintiff be regarded otherwise than a trespasser, without color of right, as against the defendant, who possessed the license and authority of the United States Government.

II. It is a familiar and fundamental principle, especially applicable where relief is sought in equity, that "ignorance of the law excuses no one," and it *never*, except under very peculiar circumstances, and where the opposite party has been guilty of fraud, or some positive misconduct, furnishes ground for relief. *Bank of U. S. v. Daniel*, 12 Pet., 32. *Petters v. Clarence*, 38 Penn. State, 194. *Smith v. McClong*, 2 Cal., 586. *Mellich v. Robinson*, 25 Vt., 603. *Shafer v. Davis*, 13 Ill., 395. *Cooper v. Crosby*, 3 Gilm., 506. *Smith v. Pinney*, 2 Neb., 139.

III. The plaintiff shows himself to have been grossly negligent in not taking an appeal. He does not show that he had any defense to the action, but, on the contrary, virtually admits that he had none. The damages assessed by the justice, instead of being excessive, are, by the plaintiff's own showing, exceedingly moderate. The plaintiff, by his own showing, was a trespasser on the land, and by the testimony of witnesses was a willful trespasser on defendant's grain. As a matter of history, the plaintiff has long since abandoned the land, and rescinded his contract with the railroad company, receiving back from them his purchase price therefor.

If, upon this state of facts, a new trial can be granted, then in every instance, where a party is dissatisfied with the judgment of an inferior court, he may apply for and obtain a new trial, and that, too, by the tedious, dilatory and expensive means of a petition in equity, instead of by the cheap, simple and expeditious method of appeal provided by the statute.

*Mason & Whedon*, for appellee, cited *Horn v. Queen*, 4 Neb., 108. *Merrick v. Bowry*, 4 Ohio State, 60. *Tracy v. Sacket*, 1 Ohio State, 54. *Palmer v. The People*, 4 Neb., 68.

GANTT, J.

It appears from the record that, on the 18th day of January, 1873, the defendant commenced an action against the plaintiff, before a justice of the peace, in the city of Lincoln, to recover damages for an alleged trespass in entering upon land and taking and carrying away some oats. The summons was served by leaving a copy thereof at the residence of the plaintiff; the time fixed for the trial of the case was the 25th day of the same month, at ten o'clock. A. M., and at that time judgment was rendered against the plaintiff. The plaintiff brought this suit by petition in equity to set aside that judgment and grant a new trial, and to maintain his cause of action he offered evidence showing that from the 14th until the 24th of January he was away in Nemaha county attending to his son, who was dangerously ill with erysipelas, and requiring his constant care and attention during that time; that on the 25th day of the month he arrived home in very ill health himself, and in the afternoon of that day he saw a copy of the summons which had been left at his residence during his absence, but was too unwell to attend to any business. The next day he rode to Lincoln, but becoming very

sick, he immediately returned home without seeing any person in relation to the case, and from that day, for nearly three weeks thereafter, he was confined to his bed with a severe attack of erysipelas. His physician testified that he was unfit to attend to any business during this time, and "was quite delirious at times." He also offered evidence showing grounds of defense to the action against him, which we think were sufficient to invoke the interposition of a court of equity when considered in connection with the facts above stated.

It seems clear from the evidence that the plaintiff's care of and attention to his son in his sickness, was an absolute necessity, and could not be avoided; and that when he returned home he was sick and incapable of attending to business for nearly three weeks thereafter. Under these circumstances we think he is entitled to the relief sought.

A court of equity will grant relief against judgments obtained by fraud, surprise or mistake, or when, from any cause, manifest injustice has been done. And when a party, from some unavoidable circumstance, and without any laches or want of reasonable diligence on his part, is prevented from appearing and making his defense to a suit, courts will relieve him upon being satisfied that there is reasonable ground to believe injustice has been done to him by a trial in his absence. *Horner v. Conover*, 2 Dutch. (N. J.), 139. *Brooks v. Whiston*, 7 S. & M., 513.

We are satisfied from the evidence that the plaintiff's case comes within the above rule, and therefore the finding must be in his favor, and the decree of this court must be rendered accordingly.

DECREE FOR PLAINTIFF.